UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JEFFREY LAGASSE,                )
                                )
        Petitioner,              )
                                )
    v.                           )    No. 1:14-cv-27-JAW
                                )
                                )
RODNEY BOUFFARD,                )
Warden, Maine State Prison,     )
                                )
        Respondent              )

### RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION

Jeffrey Lagasse has filed a habeas petition pursuant to 28 U.S.C. § 2254. He was convicted of murder, pursuant to 17-A M.R.S.A. § 201(1)(A), in the Maine Superior Court, following a plea of guilty, and he did not appeal.[1] The Superior Court denied post-conviction relief following an evidentiary hearing, and the Law Court subsequently denied discretionary review of that decision. Petitioner's federal habeas petition claims error in the plea proceedings. He argues that the plea was involuntary because he had to decide within 24 hours whether to accept it or not. He also argues that counsel provided ineffective assistance by misadvising him about an *Alford* plea[2] and by failing to negotiate for an agreement to plead to felony murder rather than murder. The State argues that petitioner has not met his burden of demonstrating that the state court adjudication was "contrary to, or involved an unreasonable application of, clearly established Federal law, as

---

[1] Title 17-A M.R.S.A. § 201(1)(A) provides that a person is guilty of murder if the person "[i]ntentionally or knowingly causes the death of another human being."
[2] *North Carolina v. Alford*, 400 U.S. 25, 37 (1970) ("[W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.")

determined by the Supreme Court," pursuant to 28 U.S.C. § 2254(d)(1); or that it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," pursuant to section 2254(d)(2), and subject to the presumption of correctness set forth in section 2254(e)(1). I recommend that the court deny relief and dismiss Lagasse's petition because the record supports the state court's factual findings, and, therefore, petitioner has not met his burden pursuant to sections 2254(d)(2), (e)(1).

## I. Factual Background and Procedural History

Petitioner was indicted in September 2009 for intentional or knowing murder or depraved indifference murder, which was alleged to have occurred on June 7, 2007. State Court Record, Vol. I ("R. Vol. I") (ECF No. 5-1), attached to Respondent's Answer to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Answer") (ECF No. 5), at [2], [11]; State Court Record, Vol. II ("R. Vol. II") (ECF No. 5-2), attached to Answer, at [11]; M.R. Crim. P. 11 ("Rule 11"). Petitioner pled guilty pursuant to a plea agreement, and the court accepted the plea following a Rule 11 hearing held in May 2010. R. Vol. I at [7], [21].

At the plea hearing, petitioner was represented by two attorneys. *Id*. at [10].[3] The State represented that, if the case had gone to trial, it would have been able to present sufficient evidence for a jury to find, beyond a reasonable doubt, the following facts: The victim operated a mill business in New Portland, Maine, and she lived and worked at the same property. *Id.* at [13]. When the mill was operating, she and a business partner employed several people, including petitioner. *Id*. He worked at the mill in 2006 and in the spring of 2007. *Id*. The victim, her

---

[3] The attorneys testified in the post-conviction hearing that one of them served as lead counsel, while the other, referred to here as co-counsel, had represented Petitioner for years and served in a consulting role. R. Vol. II at [22], [37-38].

2

business partner, and several others had decided to close the business, and in June 2007, the victim was in the process of winding it down. *Id.*

Petitioner was laid off approximately three weeks before the murder. *Id*. He was 29 years old and unemployed except for some hourly work. *Id.* Petitioner had borrowed money from the victim on at least two occasions. *Id.* He lived with his girlfriend and her children in her leased apartment less than one mile from the victim's home and business. *Id.*

Petitioner killed the victim by striking her with a piece of hardwood flooring, fracturing her skull. *Id.* at [14]. The murder occurred at approximately 10:00 p.m. at the victim's home and business. *Id.* Petitioner gave four different stories to the police about his activities around the time of the murder. In his initial story, he told them that he went to see the victim on the afternoon of June 7 to ask her if he could have some pieces of wood to finish an entertainment center he was building. *Id.* at [13-14]. He said that the victim gave permission, but he could not take the wood then because it was too long to fit into his girlfriend's Grand Prix automobile. *Id.* at [14]. He said that he was at his girlfriend's apartment that night, and the next morning he called the victim by phone and got no answer. *Id.* at [14], [17]. He told police that he left a message saying that he would be over to pick up the wood and asking if he could borrow her truck. *Id*. at [14]. He said that he went over, looked in the window of the door, saw a mess, suspected something was wrong, went back to the apartment, and called a woman who had also worked for the victim. *Id*. He told her he wanted her to join him back at the victim's house. *Id*. They conferred about calling the police, and he placed a call to 911. *Id.* at [14-15]. Petitioner and the woman were at the victim's house when the police arrived. *Id.* at [15].

The police found a drag mark on the ground outside, followed it, and found the victim's body on the property, underneath some metal roofing material. *Id.* The medical examiner

3

concluded that the victim had sustained a horrific beating. *Id.* The State represented that the evidence would lead a reasonable jury to conclude that the victim and perpetrator knew each other, there was no forced entry, and that the perpetrator was familiar with the property. *Id.* at [15-16]. There was evidence of a violent encounter inside the office area and again outside in the driveway. *Id.* at [16]. Tire impressions that matched those of petitioner's girlfriend's Jeep Cherokee overlay drag marks on the ground, indicating that the vehicle left after the incident. *Id.* Two credit cards belonging to the victim were used that night at about 11:22 p.m., at a bank ATM in Kingfield. *Id.* The user successfully withdrew $300 in the first attempt on one of the cards; another attempt on that card, and an attempt made using the second credit card, were unsuccessful. *Id.* at [16-17]. Video surveillance and still shots of the ATM taken at the time did not show a face, but showed a left hand and thumb, with a "remarkable similarity" to petitioner's thumb, holding a credit card. *Id.* at [17].[4]

Petitioner's second story was that he drove his girlfriend's Jeep Cherokee to a cemetery where he extracted $500 from a buried lockbox. *Id.* at [18]. This story came out after his girlfriend acknowledged in an interview that she had been lying to police in telling them that he had been home the whole night; rather, she said, petitioner had told her that he was leaving to retrieve money that had been obtained from a burglary nine or ten years earlier and buried in a cemetery in the Bangor/Brewer area. *Id.* In an interview with law enforcement, petitioner described in detail the trip to the cemetery and the retrieval of the money. *Id.*

Petitioner's third story was that he was at a party with a woman he identified by name, saying he had met her in prison. *Id*. at [18]. However, petitioner's girlfriend could not find the woman despite her efforts, and law enforcement was not able to turn up prison records for any

---

[4] According to counsel's testimony at the post-conviction hearing, the video and still shots of the thumb were troubling due to petitioner's "very distinctive-looking thumb." R. Vol. II at [26].

such woman. *Id.* at [18-19]. Eventually petitioner's girlfriend told law enforcement that when petitioner came home that night to the apartment, he was dressed only in his boxer shorts and carried a stack of money in his hands. *Id.* at [19].

Petitioner's fourth story was given to a fellow inmate to whom petitioner confessed that he had been present at the crime. *Id.* Petitioner claimed to the inmate that it was meant to be a robbery, it was committed with other persons, and they did not expect the victim to be there. *Id.* Petitioner told his fellow inmate that he had hit the victim with a piece of hardwood flooring, but that someone else hit the victim more. *Id.* Petitioner identified the other persons by first name only and said he did not know where the other perpetrators were. *Id.*

At the conclusion of the State's presentation, it noted that the evidence was circumstantial. *Id.* at [20]. The State told the court that although the evidence did not suggest that petitioner went to the victim's home and business with a plan to kill her, he used wood flooring that was at the scene as a weapon to strike and kill the victim. *Id.*

After the State reviewed these facts, the Court asked petitioner:

THE COURT: . . . Mr. Lagasse, do you – you have just heard the State review the facts. Do you agree that that is among the evidence that you have reviewed that would be presented at trial?

A. Yes.

THE COURT: Do you agree that that evidence would support a guilty finding by a fact finder in this case?

A. Yes.

THE COURT: Do you have any questions at all about the evidence or any issues about the evidence as the State has outlined the evidence?

A. No.

THE COURT: And are you prepared to enter a plea to that charge today?

5

A. Yes.

THE COURT: How do you plead, Mr. Lagasse, to the charge of Intentional Or Knowing Murder Or Depraved Indifference Murder, as I have reviewed with you, which carries with it a sentence anywhere from a minimum of 25 years up to life in prison?

A. Guilty.

THE COURT: Do you understand by pleading guilty to the charge that you are giving up all of the rights that we just discussed, including your right to a trial, a jury trial, your right to have counsel at the trial, a right to present evidence on your own behalf, including your own testimony if you wish, a right to cross-examine the witnesses who would testify against you and also a right to remain silent, do you understand you are giving up all of those rights?

A. Yes.

THE COURT: Okay. Are you pleading guilty for any reason other than the fact that you believe you are guilty of the offense?

[DEFENSE CO-COUNSEL]: Your Honor, as to this, Mr. Lagasse is making what is called an Alford plea, which is to say he is pleading guilty because he believes the State would present evidence to convince a jury that he is guilty beyond a reasonable doubt.

THE COURT: Okay. Mr. Lagasse, that's accurate?

A. Yes.

THE COURT: You believe that the evidence that has been outlined here and the evidence of which you are aware would support a guilty finding by a fact finder?

A. Yes.

THE COURT: You believe the State could prove your guilt on this charge beyond a reasonable doubt?

A. Yes.

THE COURT: Any question in your mind about that?

A. No.

*Id*. The court found that there was a factual basis for the plea and accepted petitioner's guilty plea.

*Id.* at [21]. Defense co-counsel then represented to the court:

6

> I want the record to reflect that we have gone over everything with Mr. Lagasse extensively, there have been repeated phone calls from the prison to and from, between counsel. I think it is important that the Court understand that this has been thoroughly analyzed. We have had private investigators following up all leads, including up to 11 o'clock last night. This has been thoroughly covered.
>
> THE COURT: Thank you for adding this to the record. Mr. Lagasse, that's accurate?
>
> A. Yes.
>
> THE COURT: You have had regular and ready access and communication with your counsel in this case?
>
> A. Yes.
>
> THE COURT: Again, I know I asked you previously, but you are satisfied with that representation; is that correct?
>
> A. Yes.

*Id.* at [21-22].

At the sentencing hearing held on June 11, 2010, petitioner was again represented by both counsel. *Id*. at [26]. The court accepted the joint recommendation of the parties and sentenced petitioner to a 30-year prison term. *Id*. at [8], [26], [42]. Petitioner did not file an application for leave to appeal the sentence pursuant to 15 M.R.S.A. § 2151 and M.R. App. P. 20, nor did he file a notice of direct appeal pursuant to 15 M.R.S.A. § 2115 and M.R. App. P. 2(a)(1).

In November 2011, petitioner filed a petition for post-conviction review, and new counsel was appointed. R. Vol. II at [2]. The State moved to dismiss the petition as time-barred; the court denied the motion. *Id.* at [2-3]. An amended petition was filed in August 2012. *Id.* at [4]. An evidentiary hearing, at which petitioner and both of his plea counsel testified, was held in July 2013. *Id*. at [4-5], [10], [22], [37-38]. Petitioner testified that his understanding was that the case was going to trial because there was no DNA evidence against him. *Id*. at [12-13]. As to his claim that the plea was involuntary, petitioner testified that counsel told him he had just 24 hours to

7

consider the State's plea offer of 30 years, and if he did not accept it in that time, the plea offer would expire and the State would ask for a sentence of 70 years. *Id.* at [14], [21]. Petitioner testified that he told counsel that he did not want to plead guilty to murder, and that counsel told him that an *Alford* plea was similar to a nolo plea and did not involve pleading guilty. *Id.* at [16], [21].[5]

As to his claim concerning a felony murder plea, petitioner testified that counsel did not advise him about the difference between a charge of murder and a charge of felony murder; rather, he found out after doing his own research in prison. *Id.* at [15].

Lead counsel testified that he visited with petitioner in prison twice, and both he and another attorney at his law firm had several telephone conversations with petitioner. *Id.* at [22]. Some plea discussions with the prosecution took place in March and April 2010, but at that time counsel and petitioner planned to go to trial, due to the lack of DNA evidence, and so plea discussions were not at the forefront. *Id.* at [23-24].

Lead counsel testified that in mid-to-late May 2010, after the revelation that petitioner confessed to his fellow inmate that he had been at the scene of the crime, petitioner's interest in a plea increased, and discussions picked up considerably. *Id.* at [23-27]. Lead counsel testified that in mid-May, the prosecution offered to recommend a 30-year sentence for murder, and counsel at that point asked about a possible felony murder plea. *Id.* at [23], [32]. Counsel testified that the felony murder plea came up only after petitioner confessed to the inmate, because before that, petitioner's story did not support felony murder. *Id.* at [35]. Lead counsel testified that he explained to petitioner the difference between murder and felony murder; he testified that petitioner discussed the differences in good time between murder and felony murder, and lead

---

[5] Petitioner conceded that if his case had gone to trial and he had been convicted, he likely would have received a sentence far in excess of the 30-year sentence he received. R. Vol. II at [19].

8

counsel believed petitioner was aware of the differences. *Id.* at [23]. However, the victim's family was firmly opposed to a felony murder plea, and so no such plea offer was made. *Id.* at [23], [32].

On May 20, 2010, counsel received a plea offer of 30 years on a murder charge, with a deadline of May 24, 2010, to respond. *Id.* at [32-33]. Counsel had had several conversations with petitioner in the week before the State's May 24 deadline. *Id.* at [25-27]. Counsel discussed the offer with petitioner on May 20, *i.e.*, the day counsel received the offer, and made a plan for petitioner to call counsel on May 24, which was a Monday. *Id.* at [33]. Lead counsel testified that his notes indicate that on May 24, he and petitioner had four conversations, including one that was over 20 minutes and one that was 29 minutes long, and on at least two of the calls both lead counsel and co-counsel discussed the case with petitioner. *Id.* at [26], [33]. Both counsel advised about the rights petitioner would be giving up, and petitioner said he understood. *Id.* at [33]. Counsel advised that a sentence of 30 years was likely significantly lower than petitioner would have received if he had been convicted after a trial, given the evidence. *Id.* at [33-34]. Lead counsel testified that he explained the *Alford* plea to petitioner. *Id.* at [27], [35]. Co-counsel also testified at the post-conviction hearing. *Id.* at [37]. He testified, among other things, that he thought petitioner understood that he was pleading guilty to murder. *Id.* at [41]. Co-counsel testified that both counsel presented the options for petitioner, but that petitioner made the decision whether to plead guilty or go to trial. *Id.* at [42].

The parties submitted their closing arguments in writing following the hearing. *Id*. at [45-58]. Petitioner asserted in the state post-conviction proceeding the same two arguments he presses

here: (1) his plea was involuntary, and (2) his counsel were ineffective because they failed to pursue a felony murder plea. *Id*. at [54-55].[6]

The state court found that the record did not support petitioner's allegation that counsel did not advocate for a felony murder plea. *Id*. at [60]. Rather, the court found, "counsel did advocate with the State for a felony murder plea," but "[t]he record established that the State simply would not agree to a felony murder plea." *Id*. The court further found that the State would not have altered its view on the felony murder plea, given that the victim's family was opposed to such a plea, and given the evidence of petitioner's purported confession. *Id.* As to petitioner's other argument, that the plea was involuntary, the court found that there was "no credible evidence to support [petitioner's] contention that he had little time to decide whether to enter his plea, or that his counsel did not sufficiently explain to him the significance of his plea, including the nature of an *Alford* plea." *Id.* at [61]. The court found that counsel had had "several conversations with Petitioner about the evidence, the nature of the plea, and the proposed plea agreement. Petitioner was well informed and had sufficient time within which to evaluate the proposed plea agreement." *Id.* at [61-62]. On that basis, the court denied relief. *Id.* at [62].

Petitioner timely requested discretionary review in the Law Court, and both he and his post-conviction counsel submitted written argument. *Id*. at [63-66], [74]; M. R. App. P. 2(b)(2)(A), 19. On December 27, 2013, the Law Court issued an order denying a certificate of probable cause. R. Vol. II at [64-65], [79]. Petitioner dated the pending federal habeas petition on January 16, 2014, and it was filed on January 21, 2014. Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition") (ECF No. 1) at [15].

---

[6] Petitioner does not pursue in his federal habeas petition a third claim he pursued in state court. In that claim, petitioner had asserted that counsel were ineffective because they failed to pursue an alternate-suspect defense.

10

## II. Applicable Legal Standard

Petitioner's claims are based on challenges to the state court's post-conviction factual findings following an adjudication on the merits. To succeed, Petitioner must show that the challenged state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also Pena v. Dickhaut*, 736 F.3d 600, 603 (1st Cir. 2013). "In this context, 'unreasonable' means 'some increment of incorrectness beyond error.'" *Pena*, 736 F.3d at 603 (quoting *Morgan v. Dickhaut*, 677 F.3d 39, 46 (1st Cir. 2012)). "When a state prisoner asks a federal court to set aside a sentence due to ineffective assistance of counsel during plea bargaining, our cases require that the federal court use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)). The statute provides that the state court factual findings are presumed to be correct, and the petitioner has the burden to rebut this presumption by clear and convincing evidence:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(e)(1). Petitioner's arguments do not implicate section 2254(d)(1) or section 2254(e)(2), but even if the Court considered those sections of the statute to apply, the Petitioner has not met the burdens set forth in either one.[7]

---

[7] Title 28 U.S.C. § 2254(d)(1) precludes federal habeas relief in claims adjudicated on the merits in state court proceedings unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Title 28 U.S.C. §2254 (e)(2) applies to cases in which the petitioner "has failed to develop the factual basis of a claim in State court proceedings," and (a) the claim relies on either "a new rule of constitutional law" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," and (b) "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

## III. Discussion

### A. Timeliness and Exhaustion of State Court Remedies

A state court petitioner must file his or her federal habeas petition timely, pursuant to 28 U.S.C. § 2244(d), and must have exhausted state court remedies, pursuant to 28 U.S.C. § 2254(b). The State does not raise either timeliness or failure to exhaust state court remedies. It does appear that the petition was timely filed.[8] Petitioner fully exhausted his state court remedies, pursuant to 28 U.S.C. § 2254(b)(1)(A), because the two issues he raises here were raised by him in the state court post-conviction proceeding, both before the Superior Court, R. Vol. II at [54-56], and in his argument before the Supreme Judicial Court in support of his petition for a certificate of probable cause, *id*. at [68-71]. *See Santiago v. O'Brien*, 628 F.3d 30, 33 (1st Cir. 2010) (determining that the petitioner had exhausted state remedies by presenting them for review in accordance with the available state court procedure).

---

[8] The conviction and sentence were entered on the docket on June 11, 2010. Because petitioner did not appeal, the judgment became final 21 days later, on July 2, 2010. *See* M.R. App. P. 2(b)(2)(A); 28 U.S.C. § 2244(d)(1)(A). There is a one-year statute of limitations on federal habeas petitions, pursuant to section 2244(d)(1). The limitations period is triggered by the entry of final judgment, pursuant to section 2244(d)(1)(A), but it is tolled while a state post-conviction proceeding is pending, pursuant to section 2244(d)(2). Petitioner's state court post-conviction proceeding was filed on November 4, 2011. The state court denied the State's motion to dismiss the petition as time-barred, and the State represents in its response to the federal petition that the state court found that petitioner may have submitted a copy of the petition to prison mail officers in April 2011. Answer at 2. Assuming that the April 2011 submission to prison mail officers may have occurred as early as April 1, 2011, the federal one-year limitations period ran for about nine months, from July 2, 2010, to April 1, 2011. At that point, the limitations period was tolled and remained tolled until final judgment on the post-conviction proceeding was entered by the Maine Supreme Judicial Court on December 27, 2013. R. Vol. II at [63-65], [79]; *see Drew v. MacEachern*, 620 F.3d 16, 20-21 (1st Cir. 2010). The one-year federal habeas limitations period then continued and ran for about 25 days, until petitioner filed his federal habeas petition in this court on January 21, 2014. The approximate nine-month period from July 2010 to April 2011 and the 25-day period from December 27, 2013, to January 21, 2014, together add up to just under 10 months, which is within the one-year limitations period for the federal habeas petition, pursuant to section 2244(d)(1)(A), (2).

## B. Claim of Ineffective Assistance Concerning a Felony Murder Plea

Petitioner claims that he received ineffective assistance of counsel because counsel failed to negotiate adequately for an offer from the State to plead to felony murder, and because counsel did not adequately inform him about the plea offer. Petition at [3], [5], [7]. He alleges prejudice in that if he had been able to plead to felony murder, he would have obtained more good-time credits. *Id.* at [7].[9] The government counters that the evidence established that counsel was not ineffective because the State refused to extend an offer to plead to felony murder, and, therefore, there was no offer to be communicated to petitioner. Answer at 4.

Petitioner fails to present evidence to rebut the presumptively correct state court findings. The Superior Court found that counsel did ask for an offer to plead to felony murder, but the State refused. R. Vol. II at [60]. There is evidence to support the state court findings; lead counsel testified that he told the prosecutor that petitioner might be interested in a plea to felony murder, but the prosecutor told him that the victim's family was opposed to it, and so the State could not offer a felony murder plea. *Id.* at [23], [32], [35]. There was no plea offer from the State for felony murder, and consequently no duty to inform petitioner. *See Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012) ("This Court now holds that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."); *Speed v. United States*, No. 12 Civ. 7777 (PKC), 10 Civ. 3333 (PKC), 04 Cr. 336 (PKC), 2013 WL 416026, at *3 (S.D.N.Y. Feb. 4, 2013) (citing *Frye*, 132 S. Ct. at 1408-10) (holding that "counsel had no duty to inform petitioner of any plea offer when no such offer existed"). Petitioner has failed to present clear and convincing evidence to rebut the presumption that the state court's factual findings were correct. *See Burt*, 134 S. Ct. at 13, 15;

---

[9] Good-time credits, referred to as deductions, are available for all but certain listed crimes, including murder. *See* 17-A M.R.S.A. § 1253(9)-(10).

*Forsyth v. Spencer*, 595 F.3d 81, 85 (1st Cir. 2010) (noting that the state court chose to credit plea counsel and the prosecutor rather than the petitioner). Consequently, his federal habeas claim of ineffective assistance of counsel with respect to a felony murder plea fails. *See* 28 U.S.C. § 2254(d)(2), (e)(1); *Burt*, 134 S. Ct. at 13, 15.

## C. Claim of Involuntary Plea and Related Ineffective Assistance Claim

Petitioner claims that his plea was involuntary because he had only 24 hours to consider the State's offer of a plea with a recommended 30-year sentence, and because lead counsel misadvised petitioner that an *Alford* plea was not a guilty plea. R. Vol. II at [70]; Petition at 3.[10] The government counters that the findings on which the state court based its conclusion that the plea was voluntary are both presumptively correct and supported by the record. Answer at 3-4.

The government is correct that petitioner has not met his burden, pursuant to 28 U.S.C. § 2254(e)(1), to rebut, by clear and convincing evidence, the presumption that the state court factual findings are correct. Regarding the factual finding that petitioner had sufficient time to consider the plea offer, petitioner testified that he had just one day to consider the plea offer, but according to lead counsel, petitioner had from May 20 to May 24 to consider the offer. R. Vol. II at [14], [32-33]. The state court chose to credit petitioner's counsel on this point. *See Forsyth*, 595 F.3d at 85. Regarding the *Alford* plea, petitioner testified that counsel told him that an *Alford* plea did not involve admitting guilt, but lead counsel testified that he explained the *Alford* plea to Petitioner. R. Vol. II at [16], [21], [27], [35]. Again, the state court chose to credit petitioner's

---

[10] Petitioner does not appear to repeat in his federal habeas petition an allegation that he made in the state court post-conviction proceeding concerning the timing of his attorney's communications with him. In Petitioner's state court written arguments, he contended that counsel waited over two months, until May 25, 2010, to convey a plea offer that the State had presented to counsel on March 22, 2010. R. Vol. II at [69]. There would have been no basis for such an allegation in any event, as there is evidence that counsel communicated with petitioner on an ongoing basis during the plea negotiation process. There is no basis on which to rebut the state court's finding that petitioner had sufficient time to evaluate the proposed plea agreement. *Id*. at [62]; 28 U.S.C. § 2254(e)(1).

14

counsel. Petitioner has not presented evidence that the state court erred, and, therefore, petitioner has failed to meet the statutory standard of presenting clear and convincing evidence to rebut the presumption that the state court's findings were correct. *See* 28 U.S.C. § 2254(d)(2), (e)(1); *Burt*, 134 S. Ct. at 13, 15; *Forsyth*, 595 F.3d at 85.

### IV. Conclusion

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2254 Cases, and the recommendation is that the court dismiss the petition and deny a certificate of appealability, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of June, 2014.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge